IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANN RYLEE MCLEOD, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:20-00595-JB-MU |
| | ) |
| UNITED STATES OF AMERICA, et al. | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint and Supporting Memorandum of Law (Doc. 78), Plaintiff's Response (Doc. 83) and Defendants' Reply (Doc. 89). The Court conducted a hearing on October 28, 2021. At this same hearing, the Court considered Plaintiff's Motion to Strike the Scope of Employment Certification (Doc. 82) and Memorandum in Support (Doc. 88), Defendants' Opposition to Motion to Strike (Doc. 92), Plaintiff's Renewed Motion to Strike and Motion to Allow Discovery (Doc. 95), and Defendants' Opposition to Plaintiff's Renewed Motion to Strike and Motion to Allow Discovery (Doc. 98). At the hearing, the Court determined additional discovery was needed in order to analyze Plaintiff's claims and Defendants' assertion of qualified immunity. Thereafter, an order (hereinafter, the "October 29 Order") was issued, denying Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, denying Plaintiff's Motion to Strike, and granting the Motion to allow discovery, thereby lifting the stay. (Doc. 102).

In Defendants' Motion to Dismiss, they assert Plaintiff's claims are barred by the doctrine of qualified immunity. (Doc. 78). Defendants argue the Court "must find in favor of qualified

1

immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" (Doc. 78, quoting *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)).  However, "[t]o rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority" (*Id.*, citing *Mobley v. Palm Beach Cty. Sheriff Dep't*, 783 F. 3d 1347, 1352 (11th Cir. 2015)).  This opinion clarifies the October 29 Order regarding the Court's decision that qualified immunity could not be granted based on the current state of the record.

Whether Defendants acted within the scope of their authority cannot be answered unless the *nature* of the authority is identified.  This is the threshold question:  Were Defendants acting under state or federal authority at the time of the incident?  The nature of the Defendants' authority is a question common to Defendants' Motion to Dismiss, Plaintiff's Renewed Motion to Strike and Defendants' assertion of qualified immunity.  This common question is addressed in the parties' briefing on the pending motions as well as their arguments before the Court on October 28.

**I.     Background**

The Second Amended Complaint (Doc. 72) was filed on August 6, 2021.  In her Second Amended Complaint, Plaintiff alleges "[j]ust before dawn. . . sixteen heavily-armed federal and state law enforcement agents broke into [her home] in Wilmer, Alabama and shot her five times in the thorax." (Doc. 72 at para. 1).  The incident occurred during the Mobile County Sherriff's Office ("MCSO") "round up" on December 19, 2019. (*Id.* at para. 3).  Plaintiff alleges the agents were at her home to arrest her husband's uncle, Nicholas McLeod ("McLeod"), who was in jail at the time. (*Id.* at para. 2).  The house where Plaintiff lived, and where the law enforcement agents

were seeking to arrest McLeod, "is owned by [Plaintiff's] husband's great grandmother." (*Id.* at para. 27). Plaintiff alleges her husband told Defendants, prior to the incident, Plaintiff was inside the home, alone, that there were guns in the home, and that he believed McLeod to be in jail. (*Id.* at para. 64-65). Plaintiff alleges "she was awakened by the beam of a flashlight in the back yard" and she "walked from the bedroom toward the kitchen to check that the outside doors were locked. (*Id.* at para. 72). Plaintiff alleges as she came to the kitchen door holding the gun, "the agents smashed open the door" and "fired dozens of shots at her through the breached doorway." (*Id.* at para. 73-74). Plaintiff alleges Defendants did not announce their presence. (*Id.* at 74). Plaintiff alleges public records revealed that Mcleod's address, at the time of his arrest, was in Atmore, Alabama. (*Id.* at para. 30).

Plaintiff named as Defendants, the United States of America, and individually, five law enforcement agents. Four of the five law enforcement agents are represented by Assistant U.S. Attorneys, on special appointment from the Northern District of Florida. These four individual defendants are: Beau Bartel, a Deputy of the U.S. Marshals Service ("USMS") (*Id.* at para. 15); Austin Wade Welch, a deputy employed by the Baldwin County Sheriff's Office ("BCSO") (*Id.* at para. 19); John Gregory Skipper, an employee of the Alabama Department of Corrections ("ADOC") (*Id.* at para. 21); and, Scott Ray Fondren, an Immigration Enforcement Agent with U.S. Customs and Border Protection ("ICE") (*Id.* at para. 23) (collectively, hereinafter, the "Defendants").[1]

---

[1] These four Defendants filed the Motion to Dismiss (Doc. 78). Deputy Sheriff Raylene Busby, though present at the scene of the incident, is not represented by the Department of Justice.

Plaintiff makes alternative allegations regarding the authority under which Defendants were acting. Plaintiff alleges the Defendants were either members of or acting under the direction of the Gulf Coast Regional Fugitive Task Force ("GCRFTF"). (*Id*. at para. 13). More specifically, Plaintiff alleges Defendants Welch and Skipper were specially deputized on December 19 and were acting, at the time of the incident, under the direction of Deputy U.S. Marshal Bartel. (*Id*. at paras. 52-53). Defendant Fondren, an ICE Agent, participated "at the request of the MCSO and acted under Defendant Bartel's direction." (*Id.* at para. 23).

In the alternative, Plaintiff alleges Defendants were acting at the direction of the Mobile County Sheriff's Office ("MCSO"), or under the "color of state law" when they entered (or directed the entry of) Plaintiff's property on December 19, 2019. (Doc. 72 at para. 131). Plaintiff alleges the MCSO "operations commander" briefed each team "on the operational plan" for the arrests at 5:00 a.m. on December 19. (*Id.* at para. 39). At that time, the MCSO operations commander gave "each team leader packets of information about the suspects their team was to arrest." (*Id.* at para. 40.). Plaintiff alleges Busby, a deputy with the MCSO, was responsible for identifying the location of McLeod, that his warrants were active, and that he was present within the house where Plaintiff lived with her husband. (*Id.* at para. 54). As further support for the contention Defendants were operating under color of state law, Plaintiff alleges "the Defendants were attempting to serve a Mobile County arrest warrant on an Alabama resident accused of committing a state law offense." (*Id.* at para. 131).

As a result of the involvement of both federal and state law enforcement agencies, Plaintiff also pled alternative theories of liability. In Counts I-VI, Plaintiff asserts claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

4

for violation of her Fourth Amendment rights (hereinafter "*Bivens* claims").  Alternatively, in Counts VII-XII and XIV-XVI, Plaintiff asserts claims under the Fourth amendment and 42 U.S.C. § 1983 for use of excessive and deadly force, unlawful entry, and failure to knock and announce (hereinafter "section 1983 claims").

The Motion to Dismiss concerns Counts I-VI and Counts VII, IX, and XI, as well as state law claims against Defendants Welch and Skipper (Counts XXI-XXVI).  (Doc. 78).  Defendants argue the section 1983 claims are due to be dismissed because "it cannot be disputed" that they were acting under color of federal law.  (Doc. 78*.*).  Defendants' stance regarding the section 1983 claims also pertains to their assertion of the defense of qualified immunity.  Defendants urge the Court to bypass the first prong of the qualified immunity analysis and accept as true they were acting as federal agents, namely as specially deputized USMS, deputy USMS, and participating members of the GCRFTF.  (*Id.*).  Defendants, then, argue the claims cannot proceed because there has been no violation of a clearly-established constitutional right.  (*Id.*).  At the hearing, Defendants maintained whether they were entitled to qualified immunity, and whether *Bivens* provides a remedy, turns on "purely issues of law, and that no discovery [is] necessary to resolve either issue." (Doc. 105).  As a result, Defendants' argument hinges on the Court's taking as true their assertion they were acting under color of federal law, and within the scope of their employment as specially deputized USMS, at the time of the incident.

However, whether Defendants (a combination of state and federal law enforcement agents attempting to arrest a local resident who was in the Mobile County jail at the time on state law misdemeanors charges) were "acting within the scope of their discretionary authority" is not straightforward as Defendants suggest.  Indeed, Defendants' argument skips the truly

5

threshold question of under what authority Defendants were acting. The current state of the record is insufficient to answer that question. Only after the record is more fully developed can the Court identify the nature of Defendants' authority. Then, the Court can turn to whether the Defendants were acting within the scope of their authority.

Accordingly, until more facts are in the record regarding the authority under which Defendants were acting, the Court cannot assess Defendants' claim of qualified immunity. Likewise, such facts would be essential to determine whether Plaintiff has sufficiently stated *Bivens* or section 1983 claims upon which relief may be granted.

## II.  Discussion

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the Eleventh Circuit, the standard set forth in *Harlow* has been more clearly articulated as a "two-step framework":

> 1. The defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."
> 2. Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions "violated clearly established constitutional law."

*Rich v. Dollar*, 841 F.2d 1558, 1563-1564 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)). To invoke qualified immunity, a public official must first demonstrate he was acting within the scope of his or her discretionary authority when the challenged action occurred. *Patel v. City of Madison*, 959 F.3d 1330, 1338 (11th Cir. 2020) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). To demonstrate that actions were within the scope of an authority

6

requires first that the authority be identified. Defendants contend, as members of the GCRFTF, they were acting in their capacity as employees of the USMS at all times. (Doc. 78).

  A. **Statutory Authority**

Defendants, first, rely on the statute providing for multijurisdictional task forces, which authorizes the USMS to "investigate such fugitive matters, both within and outside the United States, as directed by the Attorney General." *See* 28 U.S.C.S. § 566(e)(1)(B). Next, Defendants rely on 34 U.S.C. § 41503, authorizing the Attorney General to "establish permanent Fugitive Apprehension Task Forces consisting of Federal, State, and local law enforcement authorities in designated regions of the United States, to be directed and coordinated by the United States Marshals Service, for the purpose of locating and apprehending fugitives." 34 U.S.C. § 41503. Finally, Defendants rely on the Code of Federal Regulations, which permits deputization of local law enforcement officers. 28 C.F.R. § 0.112. Defendants argue the Court cannot find they were state actors unless it first concludes GCRFTF's participation in this incident was illegal.

  In response to the Motion to Dismiss and based on new discovery, Plaintiff informed the Court GCRFTF had not "adopted" the McLeod warrant for execution, as required by the Memorandum of Understanding (MOU) between the U.S. Marshals Service and the Mobile County Sherriff's Office (MCSO). (Doc. 83). As a result, Plaintiff argues Defendants, when they tried to serve the McLeod arrest warrants, were not "acting under color federal law, but they acted under Alabama law at the request of the MCSO." (*Id*.). Plaintiff contends additional discovery is needed to better understand "what was their [the GCRFTF] authority to be there in the first place." (Doc. 105). Plaintiff argues the arrest of McLeod was purely a state matter, with

7

no interstate nexus. (Doc. 104). Plaintiff contends Defendants' position results in the federalization of local law enforcement. (*Id*.).

Defendants respond that the adoption of the arrest warrant pursuant to the MOU is not "required" by law and the statutory authority granted to the USMS to "enforce the laws of the United States" is all that is needed to authorize USMS involvement in purely state matters. (Doc. 104, citing 28 U.S.C. § 564). Defendants' argument is only successful if the Court considers the incident, and Defendants' participation in it, with "a high level of generality," something the Eleventh Circuit has cautioned against. *See Spencer v. Benison*, 5 F.4th 1222, 1231 (11th Cir. 2021)("[W]e must be sure not to characterize and assess the defendant's act at too high a level of generality" because "[n]early every act performed by a government employee can be described, in general terms, as ostensibly 'furthering the public interest.'")(quoting *Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)(internal citation omitted)).

The facts of this situation require a more "specific,"*i.e.*, not generalized, approach. Here, Plaintiff alleges (and Defendants do not dispute) the search for McLeod was investigated, directed and coordinated by the MCSO. (Doc. 72). Plaintiff also alleges (and Defendants do not dispute) McLeod had been in the custody of the MSCO for five months preceding the incident and was in the Mobile County jail at the time of the incident when Defendants attempted to arrest him. (Doc. 72). There have been no allegations McLeod was a fugitive at the time of the incident. The Court does not accept Defendants' invitation to conclude, as a matter of law, they were acting under color of federal law in their effort to arrest McLeod. The current state of the record leaves unanswered essential questions regarding under what authority, and whose direction, the Defendants were acting.

### B. The Certification

In addition, Defendants rely on a Scope of Employment Certification (the "Certification") signed by Jason R. Coody, Acting United States Attorney for the Northern District of Florida, as evidence they were acting within the scope of their "federal" employment. (Doc. 78-1). The Certification was offered pursuant to 28 U.S.C. § 2679(d)(1) and the authority delegated by 28 C.F.R. § 15.4(a). The Certification states as follows:

> . . . based upon information supplied to me in my official capacity by the United States Marshal's Service ("USMS") and United States Immigration and Customs Enforcement ("ICE") that Defendant Beau Bartle was a United States Marshal, that Defendants Austin Wade Welch and John Gregory Skipper were specially deputized United States Marshals and that Defendant Scott Ray Fondren was an ICE Homeland Security Investigation Special Agent during the relevant time period alleged in the Second Amended Complaint, and that they all were acting within the scope of their federal duties as employees of the United States on that date.

(Doc. 89-1). In general, a scope of employment certification is prima facie evidence, for the purposes of evaluating claims brought under the Federal Tort Claims Act, that the employee acted within the scope of his employment. *Flohr v. Mackovjak*, 84 F.3d 386, 390. (11th Cir. 1996). However, "[i]f a plaintiff objects, the district court reviews *de novo* the United States Attorney's scope of employment certification." *Glover v. Donahoe*, 626 Fed. Appx. 926, 929 (11th Cir. 2015) (citing *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir. 1990)). The plaintiff though, upon challenge of the certification, "bears 'the burden of altering the status quo by proving that the employee acted outside the scope of employment.'" *Id*.

Here, Plaintiff challenges the Certification, and the assertion Defendants were "acting with the scope of their federal duties as employees of the United States on that day." (Doc. 89-1). Further, Plaintiff asserts "[t]he scope of the defendants' authority to serve an Alabama resident with Alabama arrest warrants at the requests of the Mobile County Sheriff without any

9

federal interest, and the auspices under which the defendants entered Plaintiff's property and shot her are factual questions which cannot be adjudicated on the present record." (Doc. 95). In response, Defendants continue to assert "the issue of whether the Federal Individual Defendants had authority to assist in the execution of a local warrant is purely an issue of law, not an issue of fact subject to discovery." (Doc. 98).

The Court disagrees. First, the Court finds the statement made by the Attorney General within the Certification to be, frankly, unhelpful: "*based upon information supplied to me. . ..*" (Doc. 78-1) (emphasis added). *See Powers v. City of Seattle*, 2008 U.S. Dist. LEXIS 13063, at *8 (W.D. Wash. Feb. 11, 2008) (ordering the parties to provide additional briefing on whether the defendant was acting within the scope of her federal employment when the assertions within an Attorney General's designee certification were "conclusory"). Given Plaintiff's allegations and the current state of the record, the Certification, without more, is insufficient evidence Defendants were acting under federal authority. Discovery is necessary to ferret out a more complete record of the roles and responsibilities of the various Defendants' involvement, who they reported to, and how they came to be at Plaintiff's residence that day.

**C. Case Law**

Finally, Defendants assert Plaintiff cannot "provide authority that federal agents serving on a USMS federal task force authorized and directed by the Attorney General who are assisting local officials on a local arrest warrant are acting under color of state law for purposes of Section 1983." (Doc. 89). Defendants argue numerous cases support their position that task force officers are <u>always</u> acting under color of federal law and Plaintiff can point to no cases that support her opinion to the contrary. (Docs. 104, 89) ("Not one case was located where U.S.

Marshals or local law enforcement deputized as federal officers were deemed to have acted under color of state and or were liable under § 1983."). Defendants make this argument while simultaneously reiterating how unique the facts of this case are. The Court reviewed the cases cited by Defendants, as well as the cases mentioned on the record in hearing. Every case cited by Defendants is materially distinguishable.

First, Defendants cite *Nelson v. Weber*, 2017 U.S. Dist. LEXIS 111742 (W.D. Wash. May 19, 2017). In *Nelson*, the district court adopted the Magistrate Judge's Report and Recommendation, granting defendant's motion for summary judgment as to the plaintiffs' state law claims, while granting leave to refile under *Bivens*. *Nelson v. Weber*, 2017 U.S. Dist. LEXIS 110660, at *2 ("even viewing the evidence in the light most favorable to plaintiffs, the record plainly establishes that the defendants were acting in their capacity as special deputies clothed in the power and authority of the United States Marshals Service when they arrested Plaintiffs. See Dkt. 46 at 7-8."). Plaintiffs in *Nelson* claimed unlawful treatment in the course of their arrest by Washington State Department of Correction ("WDOC") employees. Discovery revealed that defendants, though employees of WDOC, had been appointed to the USMS Violent Offender Task Force for a two-year period. The order cites the appointment letter: "Here, it is undisputed that the USMS appointed defendants Poston and Weber as special deputies from January 2014 to January 2016. Dkt. 42-1, Exhibit 2." *Nelson*, 2017 U.S. Dist. LEXIS 111742, at *3. The incident the subject of the plaintiff's claim occurred in April 2014, which was squarely within the period of the appointment. Next, the Report and Recommendation observes, further, "[t]he investigation report provides that Kitsap County delegated primary fugitive apprehension responsibility of plaintiff Nelson to the USMS Violent Offender Task Force. Dkt. 42-1, Exhibit 3." *Id.*, at *10.

11

In the case at hand, the record does not "plainly establish" Defendants were "clothed in the power and authority of the USMS" when they shot Plaintiff. Plaintiff alleges Defendants Welch and Skipper were deputized the morning of the incident. (Doc. 172). Further, Plaintiff alleges the GCRFTF did not adopt the warrant, identify McLeod as a fugitive to be apprehended, or conduct the underlying investigation on McLeod's whereabouts. Finally, the current state of the record does not include documents or assignments clarifying Defendants' appointment to the GCRFTF.

Defendants rely on *King v. United States,* 2017 U.S. Dist. LEXIS 215640 (W.D. Mich. August 24, 2017) to support their argument that local law enforcement agents operate under the color of federal law. In *King*, the defendants and the operation were described as follows: "Defendant Brownback is a Special Agent employed by the FBI and assigned to its Grand Rapids Resident Agency Violent Crimes/Fugitive Safe Streets Task Force. And Officer Allen is a federally deputized Special Deputy U.S. Marshal, also working full time with the Task Force. The Federal Defendants emphasize that in looking for Davison, Brownback and Allen acted in an authorized FBI investigation pursuant to the federal Fugitive Felon Act, 18 U.S.C. § 1073." *King,* 2017 U.S. Dist. LEXIS 215640 at*10. (internal citations omitted). In response, plaintiff argued defendants were acting under color of state law because the officers were executing "a Michigan warrant for a Michigan fugitive who was wanted for a Michigan crime in Michigan." *Id.* at *11. On appeal, the Sixth Circuit affirmed the lower court's dismissal of the Section 1983 claim, finding Detective Allen's "official character" at the time of the incident was therefore "such as to lend the weight of the [United States] to his decisions." *King v. United States*, 917 F.3d 409, 433 (6th Cir. 2019) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) (cert. granted sub nom. *Brownback*

12

*v. King*, 140 S. Ct. 2563 (2020) and *King v. Brownback*, 140 S. Ct. 2565 (2020), and rev'd sub nom. *Brownback v. King*, 141 S. Ct. 740, 209 L. Ed. 2d 33 (2021).  "As a deputized federal agent, Detective Allen carried federal authority and acted under color of that authority rather than under any state authority he may have had as a Grand Rapids Police detective." *King*, 917 F.3d at 433.  In order to reach this conclusion, the Sixth Circuit relied on the fact that "Allen <u>was working full time with an FBI task force</u> at the time of the incident at issue." *Id*. (emphasis added). Further, "Plaintiff has not alleged or demonstrated that the state was involved in authorizing or administering the task force; instead, it appears that <u>the FBI managed the operation with the benefit of state resources</u>." *Id*. (Emphasis added).

Here, Plaintiff has alleged and demonstrated (and Defendants do not dispute) that MCSO, the local law enforcement agency, managed the operation.  (Doc. 72).  The current state of the record reveals "that no GCRFTF personnel conducted any investigation into the whereabouts of McLeod since the arrest warrant had not been adopted by USMS and it had no knowledge of the names of the targets of the warrant operation [including McLeod] until after the briefing on the morning of December 19, 2021."  (Doc. 88, quoting Defendants' Interrogatory Response.)  There are no allegations Defendants were working full time with the task force; rather, Plaintiff alleges (and Defendants do not dispute) the opposite, *i.e.,* that the local law enforcement agents were deputized on the day of the incident.

Next, Defendants rely on *Guerrero v. Scarazzini*, 274 F. App'x 11 (2d Cir. 2008).  In *Guerrero*, the plaintiff was arrested by the following described task force:  "Scarazzini, McAllister and Bleier were officers assigned to an FBI Joint Organized Crime and Drug Enforcement Task Force investigation into a Dominican and Colombian narcotics ring in New York." *Guerrero*, 274

13

F. App'x at 12.  The instant case presents the opposite situation.  Here, Plaintiff alleges the MCSO led the investigation to arrest Mcleod on a misdemeanor warrant arising from the purchase of fake methamphetamine from a MCSO confidential informant.  (Doc. 72).

The Defendants also cite *Lawson v. McNamara*, 438 Fed. App'x 113 (3d Cir. 2011), which contains the following statement in support of the argument that as special deputies they were acting under color of federal law: "[a]ny claim under 42 U.S.C. § 1983 applies only to state and local officials, not to federal defendants such as Kee and McNamara who are Special Deputy United States Marshals."  *Id*.  However, the district court opinion, which the Third Circuit affirmed on appeal, includes detail clarifying the warrant was assigned to and pursued by members of the USMS Violent Crimes Fugitive Task force.  *Lawson v. McNamara*, 2010 U.S. Dist. LEXIS 120645, *3-4 (E.D. Penn. Nov. 12, 2010).  Once again, the situation here is contrary.  Plaintiff alleges the MCSO pursued the McLeod arrest warrant, researched McLeod's whereabouts, and provided all the background information to Bartel's team on the day of the intended arrest.  (Doc. 72).

Defendants also rely on *Ellis v. Ficano*, 1995 U.S. App. LEXIS 38840 (6th Cir. 1995), where the Sixth Circuit affirmed the grant of summary judgment on Section §1983 claims plead against certain federal defendants.  The Sixth Circuit described the relevant defendants as follows:

> The 14 individual defendants who participated in the search were employed by either Wayne County or the Drug Enforcement Agency (DEA).  Defendants Pamela Elsey, Kenneth Hunter and Steve Koester were employed by the Wayne County Sheriff's Office, but were assigned to the Wayne County Joint Federal Task Force pursuant to an agreement between the Sheriff's Department and the DEA. Although on the county payroll, these three individuals were acting as DEA Task Force Agents. Defendants John Walker, Melvin Turner, Michelle Delduco, David DiBiassi and Curlie Thompson were Wayne County deputies. Defendants George McMillan, Roy Adams, William Hodges, Barry Smith, Philip Maddox and Scott Roberts were special agents of the DEA.

14

*Ellis*, 1995 U.S. App. LEXIS 38840, at *4-5.  The underlying investigation was described by the Court as follows: "The narcotics investigation that precipitated the search of 638 Pingree Street was a <u>federal investigation</u> in conjunction with the Wayne County Sheriff's Department." *Ellis*, 1995 U.S. App. LEXIS 38840, at *4 (emphasis added).  Further, the "debriefing was held for the defendants at the DEA office, and the defendants, with the exception of Hunter, proceeded to the Pingree Street location to execute the search warrant . . . A DEA agent [George McMillan] was in charge of the raid.  The five DEA special agents, two Joint Task Force agents (Elsey and Koester), and five Wayne County deputies assisted in the warrant's execution.  Hunter, whose affidavit secured the search warrant, did not participate in the actual search." *Ellis*, 1995 U.S. App. LEXIS 38840, at *8.

As previously discussed, Plaintiff alleges the debriefing was held at the MCSO and the investigation preceding the search was undertaken by the MCSO.  Plaintiff alleges, and the Defendants do not refute, the MCSO identified and placed McLeod on the round up list, to be arrested on state misdemeanor charges.  The following cases cited by Defendants are similarly distinguishable.  In each instance, the local law enforcement agents were deemed to be federal actors because the underlying investigation either contained a federal nexus or arose from a criminal investigation led by a federal agency:

- *Majors v. City of Clarksville*, 113 F. App'x 659 (6th Cir. 2004).  The Sixth Circuit affirmed summary judgment in favor of six individual defendants in a civil rights action brought under 42 U.S.C. § 1983 (but "in reality a *Bivens* claim under the Fourteenth Amendment") where the task force members were specially deputized DEA agents.  The agents arrested plaintiff and 27 others, who were

charged in federal court as a result of a DEA-lead investigation of two drug organizations operating in Clarksville.

- *Pike v. United States*, 868 F. Supp. 667 (M.D. Tenn. 2012). The district court described the operation underlying the incident involving state and local law enforcement officers as "Operation FALCON, a program coordinated by the United States Marshal's Service ("USMS")." In the instant case, Plaintiff alleges the incident occurred during a round-up coordinated by MCSO.

- *Harris v. Gadd*, 2008 U.S. Dist. LEXIS 7295 (E.D. Ark. Jan. 16, 2008). With the benefit of discovery, the district court determined "[a]lthough Defendant Anderson was employed by the Arkansas State Police, he committed the complained-of conduct in his capacity as a DEA federal drug task officer. The DEA is authorized by statute to enter task force agreements with State and local law enforcement agencies for cooperative enforcement and regulatory activities concerning traffic in controlled substances. *See* 21 U.S.C. §873(a)(7)." *Harris*, 2008 U.S. Dist. LEXIS 7295, at *21-11.

- *Love v. Mosley*, 2015 U.S. Dist. LEXIS 133966, *10-13 (W.D. Mich. March 30, 2015). The incident occurred on July 15, 2012. The record reflected that the USMS appointed the defendant "as a Special United States Deputy Marshal ("Special Deputy") for the period of March 24, 2011 through November 30, 2012. *See* Special Deputation Appointment and Oath of Office (docket no. 13-4); Sharp Decl. at ¶ 2 (docket no. 13-2)." *Id*. (emphasis added).

16

- *United States v. Martin*, 163 F.3d 1212 (10th Cir. 1998). The Tenth Circuit affirmed the district court opinion finding that a local police detective was a federal officer when he was deputized to participate in a federal narcotics investigation and cooperative narcotics interdiction effort between the Enid office of the FBI and the Oklahoma Police Department which resulted in numerous federal indictments.

In 2018, the Eleventh Circuit relied on a task force's adoption of a warrant to uphold defendant's conviction of forcible assault against a federal employee "while engaged in or on account of the performance of official duties.'" *United States v. Smith*, 743 Fed. App'x. 943, 946 (11th Cir. 2018) (quoting 18 U.S.C. 111(a)(1)). In *Smith*, the defendant challenged whether the the evidence sufficiently established that the local sheriff he assaulted was a "federal officer acting in his official capacity." *Id.* The Eleventh Circuit determined that the local sheriff was deputized as a member of the U.S. Marshals Regional Fugitive Task Force when "multiple officers testified, local officers began pursuing Smith because the Task Force had adopted the warrant for Smith's arrest." *Smith*, 743 Fed. App'x. at 948. The Eleventh Circuit explained, "The Task Force adopts warrants—including state warrants—and deputizes local officers to execute those warrants." *Id*. Plaintiff alleges (and Defendant does not dispute) the McLeod warrant was not adopted by the GCRFTF, as it was in *Smith*.

For all of the foregoing reasons, Defendants are not entitled to qualified immunity based on the current state of the record. The Court finds questions remain as to whether Defendants were "federal employees acting within the scope of the federal employment." (Doc. 89-1). Whether the Defendants are due qualified immunity cannot be evaluated until the parties further

17

develop the record on this threshold matter. Only then can the Court proceed to the determination of whether Defendants were acting within their discretional authority and, if so, whether they violated a clearly established constitution right. Likewise, the Court finds whether Plaintiff has stated *Bivens* claims or section 1983 claims turns on the nature and scope of Defendants' authority. Until discovery has been conducted on this issue, Plaintiff's alternative theories of liability stand.

**DONE and ORDERED** this 14th day of December, 2021.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE