**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANN RYLEE McLEOD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CA NO.: 20-CV-00595-JB-MU** |
| | : | |
| **UNITED STATES OF AMERICA, and** | : | |
| **AUSTIN WADE WELCH, JOHN GREGORY** | : | |
| **SKIPPER, SCOTT RAY FONDREN,** | : | |
| **RAYLENE BUSBY, BEAU BARTEL,** | : | |
| **REBECCA P. MILLER, and DAVID SMITH,** | : | |
| **In their individual capacities,** | : | |
| | : | |
| **Defendant.** | : | |

## THIRD AMENDED COMPLAINT

### INTRODUCTION

1.      Just before dawn on December 19, 2019 sixteen heavily-armed federal and state law enforcement agents broke into 19-year-old Ann Rylee McLeod's home in Wilmer, Alabama and shot her five times in the thorax.  Ann collapsed face-down on her kitchen floor.  The shooters retreated, leaving her alone unattended on the floor for fifteen minutes: conscious, in excruciating pain, blood soaking her pajamas.

2.      The agents were there to arrest Nicholas McLeod, but he did not live at Ann's house. Nicholas McLeod was at that time in the Mobile Metro jail and had been in custody since July 9, 2019, held under his correct name and biographical information, including his Atmore, Alabama (not Wilmer) residence address.

1

3.     The raid on Ann's house was part of the Mobile County Sheriff's publicity seeking "round-up" of low-level drug suspects conducted that day for print and electronic media reporters who were issued bullet proof vests and invited to watch the arrests.[1]

4.     The team which broke into Ann's house was made up of United States Marshal's Gulf Coast Regional Fugitive Task Force (the "Task Force" or "GCRFTF") members, Department of Homeland Security Agents and Task force Officers (TFOs); Mobile County Sheriff's Office ("MCSO")[2] personnel, and local police officers.  They had no reason to believe that Nicholas McLeod was living at the Wilmer address, and no reason to believe he was at Ann's house when they smashed in the carport door and shot her.

5.     The Defendants violated Ann's Fourth Amendment right to be secure in her person and house.  Plaintiff brings this civil rights action pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and the Civil Rights Act of 1871, 42 U.S.C. §1983; and under the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671-80. She also alleges state law claims against certain defendants.  She seeks compensatory and punitive damages, an award of attorneys' fees and costs, and such relief as this Court deems equitable and just.

**JURISDICTION AND VENUE**

6.     The Court has personal jurisdiction over Defendants because the Defendants' alleged acts and omissions took place in Mobile County, Alabama.

---

[1] MCSO Public Affairs Director Lori Myles suggested that reporters publicize the arrestees' names "as Santa's Naughty list" or "Thug Thursday" since the raid was timed for the Thursday before Christmas.

[2] The Mobile County Alabama Sheriff is a state Constitutional officer.  The Sheriff's deputies and the Mobile Metro jail correctional officers are his agents.  There is no legal entity entitled the Mobile County Sheriff Office (MCSO), but it is referred to herein to denote collectively the Sheriff, his agents, and their functions.

7.      The Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331. Plaintiff invokes supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over the state law claims which are related to, and form part of, the case or controversy as the claims within the Court's original jurisdiction.

8.      Venue is properly in the Southern District of Alabama under 28 U.S.C. §§1391(b) and 1391(e)(1) because the events giving rise to this action occurred in the district and the parties reside in the district.

9.      Plaintiff demands trial by jury.

## PARTIES

10.     Plaintiff Ann Rylee McLeod ("Ann"), now 21 years of age, resides in Mobile County Alabama.  At the time of the shooting she was 19 years old and was unmarried.  Her maiden name was Ann Rylee.

11.     The United States of America acted through the United States Marshal's Gulf Coast Regional Fugitive Task Force (GCRFTF) on December 19, 2019 when the task force attempted to arrest Nicholas McLeod and shot Ann. The United States further acted through Department of Homeland Security agents and TFOs.

12.     The GCRFTF consists of United States Marshals Service (USMS) deputies and specially deputized law enforcement officers (TFOs).

13.     On information and belief, all of the named defendant law enforcement officers who participated in the December 19, 2019 attempted arrest of Nicholas McLeod were either GCRFTF members, Department of Homeland Security agents or were Alabama State, Sheriff's, county or municipal law enforcement officers who were acting in conjunction with and under the direction of the GCRFTF.

3

14.     Ann filed an administrative claim for compensation under the Federal Tort Claims Act (FTCA) on April 2, 2020.  The United States has never responded to the claim.

15.     Defendant Beau Bartel is a Deputy U.S. Marshal stationed in the Southern District of Alabama at the GCRFTF headquarters, 1119 Government Street, Mobile, Alabama.  He was the designated "team leader" who organized and directed the GCRFTF team, as well as other federal, state, Sheriff's, county and local officers, in the attempted to arrest Nicholas McLeod on December 19, 2019.  According to USMS Enforcement Operations Standard Operating Procedures, "team leaders are responsible for making critical tactical decisions on the street for each arrest and ensuring the Enforcement Operations standard operating procedures, polices, and regulations are adhered to by all team members."  He is sued in his individual capacity, and he is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

16.     Defendant Raylene Busby is a Mobile County Deputy Sheriff.  She was the MCSO "narcotics investigator" assigned by the MCSO to Bartel's GCRFTF team on December 19, 2019.  The MCSO operational plan for the December 19, 2019 round up made her "responsible for gaining intelligence of narcotics activity" and to decide if a search warrant is needed" based on evidence obtained incident the attempted execution of arrest warrants.  Busby was not a passive observer of the attempted execution of the arrest warrants which she obtained.  She was tasked with using the GCRFTF's attempted service of arrest warrants as a means "to gain additional information that could lead to additional charges or the location of illegal narcotics and stolen property."  The operational plan was designed and executed with purpose of allowing the officers to search incident to attempted arrest, engage in "protective sweeps," conduct "pat downs," discover items in "plain view", and otherwise creating circumstances and  exigencies which would justify searches without probable cause or a search

warrant.  Bartel's team included MCSO K-9 officers to help accomplish this purpose by "utiliz[ing] the canine's abilities to search for persons or illegal narcotics."

17.    On information and belief, Busby was not a specially deputized U.S. Marshal on December 19, 2019 but participated in the attempted arrest of Nicholas McLeod in conjunction with the GCRFTF team.

18.    She is sued in her individual capacity, and she is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

19.    Defendant Austin Wade Welch is a Baldwin County Deputy Sheriff.  On information and belief, he was a specially deputized U.S. Marshal on December 19, 2019.  The Baldwin County Sheriff's Office entered into a Regional Fugitive Task Force Memorandum of Understanding with the United States Marshal's Service under which Defendant Welch participated in the GCRFTF, and the BCSO received financial consideration for his participation, including reimbursement for overtime expenses.  Special Deputy United States Marshals do not possess general authority to act as Deputy United States Marshals. Special Deputy United States Marshals are responsible for adhering to the rules and regulations and policies of their parent agencies, as well as USMS Enforcement Operations procedures, polices and orders as issued by the Chief Deputy United States marshal or the Chief Inspector.

20.    On information and belief Welch fired numerous shots into Ann's house striking her and he is sued in his individual capacity, and he is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

21.    Defendant John Gregory Skipper is an Alabama Department of Corrections Sergeant/Training Instructor.  On information and belief, he was a specially deputized U.S. Marshal December on 19, 2019.  The Alabama Department of Corrections entered into a Regional Fugitive Task Force Memorandum of Understanding with the United States Marshal's Service under which Defendant

5

Skipper participated in the GCRFTF, and the AL DOC received financial consideration for his participation, including reimbursement for overtime expenses.  Special Deputy United States Marshals do not possess general authority to act as Deputy United States Marshals.  Special Deputy United States Marshals are responsible for adhering to the rules and regulations and policies of their parent agencies, as well as USMS Enforcement Operations procedures, polices and orders as issued by the Chief Deputy United States Marshal or the Chief Inspector.

22.     On information and belief Skipper fired five shots into Ann's home striking her  and he is sued in his individual capacity, and he is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

23.     Defendant Scott Ray Fondren is a Department of Homeland Security HSI agent.  On information and belief, he participated in the December19, 2019 MCSO round-up together with Department of Homeland Security HSI agents, but at the request of the MCSO and acted under Defendant Bartel's direction.

24.     On information and belief Fondren fired numerous shots into Ann's home striking her and he is sued in his individual capacity, and he is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

25.     Rebecca P. Miller (Miller) was a civilian employee of the MCSO working in the intelligence unit.  On November 26, 2019 MSCO Defendant Sgt. David Smith gave Miller a list of approximately fifty-five suspects who were to be arrested in the planned December 2019 round-up. Smith directed Miller to research biographical information concerning the suspects and to prepare folders or "packets" of information on each target.  Nicholas John McLeod was among the suspects.  On information and belief Defendant Miller did not conduct the research and prepare the intelligence packet requested by Sgt. Smith and required by MCSO policy.

6

26.     She is sued in her individual capacity, and she is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

27.     Defendant MCSO Sgt. David Smith (Smith) was defendant Busby's immediate supervisor in the narcotics unit, and the designated "operations leader" of the December 19, 2019 round-up.  At Smith's request, Busby, Deputy Alan O'Shea and Deputy Clint Law provided Sgt. Smith with the names and birth dates (and in Busby's case Social Security numbers) of suspects who were to be arrested in the December 19, 2019 round-up.  Smith then gave the list of suspects to defendant Miller and instructed her to follow MCSO policy and research each suspects' residence address, criminal record, vehicles, associates and relatives, and provide information concerning whether the suspect would pose high-risk threat to arresting officers.

28.     Smith is sued in his individual capacity, and he is jointly and severally liable for Ann's injuries together with the named Defendants and the unnamed law enforcement officers.

29.     Other law enforcement agents, presently unknown, participated as agents of the United States in the GCRFTF's efforts to arrest Nicholas McLeod on December 19, 2019.  They are responsible and liable for the unconstitutional acts which resulted in Ann's injuries.  They will, upon discovery of their identities, be sued in their individual capacities and are jointly and severally liable with the other named and unnamed law enforcement officer for the unconstitutional acts which resulted in Ann's injuries.


**FACTS**

30.     Ann and her then fiancé and now husband, Christopher McLeod ("Chris"), moved into the house at 11223 Old Moffat Rd., Wilmer, Alabama in March, 2019.  The house is owned by Chris' great-grandmother.  A roommate, Matthew Sullivan ("Matthew"), joined them a month later.  They lived there through the December 19, 2019 shooting.

31.     Nicholas McLeod, who is Chris' uncle, lived in Atmore, Alabama. Nicholas McLeod never lived with Ann and Chris at 11223 Old Moffat Rd. and never visited them there.

32.     On June 27, 2019, a MCSO confidential informant sold $100 worth of fake methamphetamine to Nicholas McLeod at the Semmes Wal-Mart.  Busby and MCSO Dep. Allen O'Shea monitored the sale, and then detained Nicholas McLeod and recovered the fake drug.  Rather than arrest Nicholas McLeod, they released him to work as their informant in Atmore.  However, he could not produce the desired information.

33.     At the time of the June Wal-Mart deal, Nicholas McLeod was already a defendant in a pending MCSO drug case, Circuit Court case CC-2018-000239.  Publicly available Mobile County District and Circuit Court records in that case and in three others show that from March 27, 2019 to the present, Nicholas McLeod's residence address was 1377 McCullough Rd., Atmore, Alabama.  McLeod failed to appear in case CC-2018-000239 on June 25, 2019 and the court issued an alias warrant for his arrest, showing 1377 McCullough Rd., Atmore, Alabama as his address.

34.     On July 9, 2019, Nicholas McLeod was arrested when he appeared in Circuit Court in CC-2018-00239 and he was booked into the Mobile Metro Jail under his correct name, Atmore address, date of birth, social security number, SID number, and Metro jail PIN.  The Mobile County Sheriff operates and staffs the Mobile County Metro Jail.  Nicholas McLeod remained in MCSO custody and was not released on bond until January 17, 2020 – three weeks after the shooting.

35.     On September 19, 2019, the Circuit Court ordered that Mobile Metro Jail staff transport Nicholas McLeod to the Mission of Hope, an in-patient drug rehabilitation facility.  The Court ordered that he be confined to the facility, and the Mobile County Sheriff transport him back to the Metro jail when he completed the program.

36.     On November 26, 2019, the MCSO narcotics unit began planning for a December 19, 2019 "round-up" of drug suspects.  Defendant Sgt. David Smith gave Miller a list of approximately fifty-five suspects, one of whom was Nicholas John McLeod. Smith directed Miller to research biographical information concerning the suspects and to prepare folders or "packets" of information on each target.

37.     MCSO policy required that Defendant Rebecca Miller  thoroughly research the round-up suspects' possible residence addresses, and their criminal records, vehicles, associates and relatives, and any information concerning whether the suspect would pose an arrest risk. The intelligence information was to be used by the round-up arrest teams to locate and safely arrest the suspects.

38.     Miller had access to various law enforcement, judicial and commercial data bases to gather this information. These data bases include the MCSO's internal booking and arrest history systems; the Alabama law enforcement tactical system (LETS); the Alabama Department of Corrections records; the Alabama Criminal Justice Information System (ACJIS); Alacourt; and commercial services which gather records from utility companies, credit bureaus, tax records, vehicle registrations and trace links between the subject and his relatives and associates.

39.     On information and belief Miller prepared thorough intelligence packets on many of the suspects, but did not prepare the required intelligence packets for Nicholas John McLeod and at least ten other of the round-up suspects who had been identified by Sgt. Smith.[3]

40.     Because Miller did not follow MCSO policy, she did not discover from readily available resources that Nicholas McLeod's residence was in Atmore, Alabama, not Wilmer; that he was placed in

9

the Mobile Metro jail on July 9, 2019; that McLeod was in the Mobile County Sheriff's custody continuously July 9 throughout the year 2019.

41.     Miller's failure to follow policy also resulted in the McLeod arrest warrants listing an invalid address: 11223 Old Moffett (*sic*) Road, Wilmer, Alabama. Defendant Smith passed the deficient intelligence on to the round-up arrest team, including the defendants Busby, Bartel, Welch, Skipper and Fondren - who themselves failed in their independent duty to investigate McLeod's whereabouts, residence, and the status of the December 17, 2019 warrants.

42.     On December 17, 2019 Defendant Sgt. Smith received Miller's packets and delivered the round-up complaints and warrants to a Mobile County District Court magistrate who subsequently signed the complaints and issued the arrest warrants.  In violation of MCSO policy, Sgt. Smith did not review Miller's packets to insure that they were complete.  A cursory review would have shown that Miller did not produce the required intelligence information for McLeod and at least ten other suspects.

43.     Defendant Smith distributed the defective intelligence packets and warrants (including those for Nicholas John McLeod) among the four round-up team leaders at the 5 a.m. briefing on December 19, 2019.  Because Smith did not follow MCSO policy, he did not discover that Miller had not prepared the Nicholas John McLeod intelligence packet as required by MCSO policy.

44.     MCSO policy also required that Sgt. Smith confirm that the warrants were active immediately prior to the attempt to serve them.  Smith did not do so.  Because Sgt. Smith did not follow MCSO policy, he did not learn that Nicholas John McLeod had already been arrested on the warrants and was in jail.  Sgt. Smith had actual knowledge of the faulty vetting of the suspects. Smith was told on December 18, 2019 that five of the round-up suspects for whom arrest warrants had been issued were already in custody on other charges.  Additionally, Defendant Bartel told Smith at the December 19,

10

2019 preoperational briefing that round-up suspect Gary Wayne Gurley was not at large, but had been arrested two weeks earlier and was in the Metro jail and.

45.     On December 16, 2019, the Metro Jail staff notified the Circuit Court that Nicholas McLeod would graduate from the Mission of Hope on December 18, 2019, and could be transported back to the Metro jail.

46.     On December 17, 2019 Busby signed criminal complaints and obtained arrest warrants for the targeted round-up suspects from a Mobile District Court Magistrate.  On that date Busby, Dep. Alan O'Shea, and MCSO Dep. Clint Law obtained from the Magistrate about 110 arrest warrants on 55 drug suspects who were to be arrested in the round-up.

47.     Included among the arrest targets was Nicholas McLeod for crimes arising from the June 27, 2019 Wal-Mart fake drug transaction. [4]  When Busby went before the Magistrate to obtain the warrants, she gave the Magistrate a sworn "case review" stating Nicholas McLeod lived at 11223 Old Moffett (*sic*) Rd., Wilmer, Alabama.  This representation about Nicholas McLeod's residence was false – he lived in Atmore and was in MCSO custody.

48.     Around 2:30 p.m. on December 18, 2019 MCSO transportation officer Cleve Hudson picked Nicholas McLeod up at the Mission of Hope and drove him back to the Metro jail in a MCSO van.  At 3:36 p.m. Hudson served (arrested) Nicolas McLeod on the Wal-Mart warrants and booked him into the Metro jail on the new charges, again under his correct name and biographical information, including the Atmore residence address.  The MCSO's widely viewed, publicly available "24 Hour Booking" web page for December 18, 2019 showed Nicholas McLeod booked into the Mobile Metro

---

[4] The warrants were WR 2019-012121, attempt to commit a controlled substances crime - the purchase of $50 of fake methamphetamine; WR 2019-012119, misdemeanor tampering with evidence, the fake meth; and WR 2019-012120 misdemeanor possession of drug paraphernalia.  The warrant for McLeod's attempt to commit a controlled substances crime is a low-level Class II warrant under USMS policy.  Under USMS policy, enforcement operations personnel do not ordinarily serve misdemeanor warrants.

11

Jail.  "Busted in Mobile" and "Arrested in Mobile," two popular commercial web sites, republished the MCSO information (including McLeod's mug shot) on December 18, 2019 on their Facebook pages.

49.      Less than an hour later, at 4:34 p.m. on December 18, 2019, MCSO warrants section employee Deirdre Greene recorded Nicholas McLeod's arrest on the Wal-Mart warrants in the MCSO data base.  Her entry showed "The Selected Inmate is in Jail."  Ms. Greene's data entry also noted that the executed Nicholas McLeod arrest warrants were among the warrants which were scheduled to be served in the next day's round-up.  Greene flagged the entry with the notation: "801 ROUND UP 12/19/2019." All GCRFTF team members, including Bartel and Busby, had access to this database showing that the Nicholas McLeod warrants were no longer active because he had been arrested and was "in jail" - the Mobile Metro Jail.

50.      The round-up force, including the defendants, met at about 5:00 a.m. on December 19, 2019 and were briefed on the operational plan for the arrests by "operations commander" MCSO Lt. Larry Patrick White and "operations leader" MCSO Sgt. David Smith.

51.      The round-up force was divided into four teams, each led by a designated "team leader." MCSO Sgt. David Smith gave each team leader packets of information from about the suspects their team was to arrest.

52.      Deputy U.S. Marshal Bartel was designated one of the four team leaders.  The other three team leaders were Mobile County Sheriff's Office employees Sgt. Eiland, Deputy Drew Walsh, and Cpl. John Cassidy.

53.      The Mobile County Sheriff's Office had previously entered into a Regional Fugitive Task Force Memorandum of Understanding (MOU) with the United States Marshal's Service under which its personnel participated in the GCRFTF, and the MCSO received services and financial consideration for its participation, including payment for training and reimbursement for overtime expenses.  Pursuant to

the MOU, the MCSO agreed to refer cases for investigation by the GCRFTF.  The GCRFTF Chief

Inspector had discretion whether to adopt MCSO cases.  Even if the GCRFTF assumed apprehension

responsibility for the execution of MCSO arrest warrants, the MCSO retained responsibility for the

cases.

54.     The members of Defendant Bartel's team included Defendant Busby; MCSO K-9 officers;

five Homeland Security Agents, including Kenneth Matthews and Defendant Scott Ray Fondren;

Deputy U.S. Marshal Jordan Futo and other unknown U.S. Marshal Service deputies; and Special

Deputy USMS task force officers (TFOs), Darlene Looney, James Gazzier, Sam Castleberry, J.T. Silcox,

and Defendants Welch and Skipper.

55.     Bartel was required by the United States Marshal Service's Enforcement Operations,

Standard Operating Procedures – propounded by the USMS Investigative Operations Division and

specifically designed to apply to enforcement operations undertaken by Regional Fugitive Task Forces –

to confirm that the Nicholas McLeod arrest warrants were active prior to service and to conduct a

complete background investigation to verify Nicholas McLeod's residence address and his whereabouts

at the time of attempted service.

56.      Bartel did not conduct the investigation he was required to perform.  A basic records

check would have shown that the Nicholas McLeod warrants were not active – they had already been

served; that Nicholas McLeod lived in Atmore not Wilmer; and that Nicholas McLeod was presently in

the Mobile Metro jail, not at 11223 Old Moffat Rd., Wilmer.

57.     Bartel knew that he could not rely on the MCSO intelligence unit, or Busby to verify the

status of his team's arrest warrants.  At about 5:30 a.m. on December 19, 2019, Bartel saw that among

his team's arrest targets was Gary Wayne Gurley, Jr.  Bartel knew that he and Busby had recently

arrested Gurley and called the MCSO warrants division records specialist Daryl Carpenter who

13

confirmed the Gurley had been arrested on December 2, 2019 and was presently in the Mobile Metro Jail.  Busby participated in Gurley's arrest on December 2.  Bartel told Sgt. Smith that Gurley was in custody, and Gurley's round-up warrants were withdrawn.

58.     Not only did Bartel conduct no investigation about the status of Nicholas McLeod's warrants, he had no information which would give him reason to believe Nicholas McLeod lived at 11223 Old Moffat Rd., Wilmer on December 19, 2019.  He never conducted surveillance or directed that surveillance be conducted at 11223 Old Moffatt Rd. to confirm it was Nicholas McLeod's residence, or that McLeod was present there on December 19, 2019.  Further, Bartel had no information which would give him reason to believe Nicholas McLeod was present inside Ann's house on December 19, 2019.

59.     At no time in December of 2019, prior to the shooting, did any Magistrate issue a search warrant authorizing law enforcement officers to enter and search the premises at 11223 Old Moffat Rd., Wilmer, Alabama.  Defendants knew a search warrant had not been issued for the premises at 11223 Old Moffat Rd., Wilmer, Alabama.

60.     Nevertheless, on December 19, 2019 at about 6:30 a.m. Bartel ordered his team, including all of the defendants, to enter Ann's property to arrest Nicholas McLeod.

61.     Bartel assigned members of his team, including all of the defendants, various duties which they were to perform in attempting to arrest Nicholas McLeod on December 19, 2019, including who would enter onto the premises to take up surveillance positions, and who would enter the carport in order to force the side-door.

62.     Bartel directed armed team members, including GCRFTF personnel, to enter the property at 11223 Old Moffat Rd to take up surveillance positions in the side and back yard.

63.     Bartel directed that the Defendants Welch, Skipper and Fondren, and others unknown, enter the property on the home's carport side.

14

64.      Bartel directed that the Defendants Welch, Skipper and Fondren, and others unknown, force entry into the home through the carport side door.  Bartel ensured that Defendants Welch, Skipper and Fondren were equipped with lethal weapons, bullet proof vests and a breaching ram in order to carry out his directive. Bartel knew that the arrest warrants were issued for low level, non-violent crimes, and that the degree of armament assigned the Defendants was vastly disproportionate to the circumstances, especially given the likelihood that Nicholas McLeod would not be found in Ann's residence.

65.      MCSO policy required that Busby, the team's "narcotics investigator," verify that the Nicholas McLeod arrest warrants were active; that he lived at 11223 Old Moffat Rd.; and that he was actually present inside the home at 6:30 a.m. on December 19, 2019.

66.      Busby did not conduct the investigation she was required to perform.  A basic check of her agency's records would have shown that the Nicholas McLeod warrants had already been served; that Nicholas McLeod's residence was in Atmore not Wilmer; and that Nicholas McLeod was in the Mobile Metro jail on December 19, 2019.

67.      Not only did Busby fail to investigate the status of the Nicholas McLeod arrest warrants, she had no information which would give her reason to believe Nicholas McLeod lived at 11223 Old Moffat Rd., Wilmer on December 19, 2019.  She never conducted surveillance or directed that surveillance be conducted at 11223 Old Moffat Rd. to confirm it was Nicholas McLeod's residence, or that McLeod was present there on December 19, 2019.

68.      Not only did Busby have no information which would give her reason to believe Nicholas McLeod was present inside Ann's house on December 19, 2019, residents of the house told her that Nicholas McLeod did not live there, was not inside the house, and that he was likely in jail.

69.      Busby had no reasonable grounds to believe that Nicholas McLeod lived at 11223 Old Moffat Rd. on December 19, 2019.

15

70.     On information and belief neither Bartel nor Busby conducted any investigation to determine whether Nicholas McLeod was in fact present in Ann's house in Wilmer at 6:30 am on the morning of December 19, 2019.

71.     Bartel and Busby are directly responsible for the unconstitutional acts committed by the team members, including all of the defendants, when they trespassed on Ann's property and shot her.

72.     It was still dark at about 6:15 a.m. on December 19, 2019 when Bartel and his team, including Defendants Busby, Welch, Skipper and Fondren, arrived at 11223 Old Moffat Rd., Wilmer to arrest Nicholas McLeod.

73.     As the team pulled up to 11223 Old Moffat Rd. in four or five unmarked vehicles, they immediately encountered Chris and Matthew at the curb in front of the house where the boys were putting out trash before leaving for work at Dixie Supply.

74.     Busby asked 20-year-old Chris if he was the 40-year-old Nicholas McLeod, even though she had Nicholas McLeod's picture with her and knew him personally from the Wal-Mart transaction.

75.     Chris showed Busby his identification, including a MCSO pistol permit.  Chris explained that his great grandmother owned the house at 11223 Old Moffat Rd. and that he lived there with his fiancée, Ann, and a roommate, Matthew Sullivan.  He told Busby that Ann was asleep alone inside, and that there were guns in the house.

76.     Chris told Busby that Nicholas McLeod was his uncle; that Nicholas McLeod did not live there; that Nicholas McLeod was not inside the house; and that he thought Nicholas McLeod was in jail.

77.     Chris offered to go back to the house or call Ann on her cell phone to alert her that agents were outside looking for Nicholas McLeod.

78.     Busby accused Chris of lying and rejected his offer to alert Ann.  Chris was frisked and detained in the driveway of his own house.

16

79.      Matthew Sullivan spoke with agents and confirmed he lived there with Chris and Ann and explained that Ann was inside the house.  He told Busby that Nicholas McLeod did not live there, and that he was not present inside the house.  Matthew said that he heard Nicholas McLeod was in jail. Matthew was also frisked and detained.

80.      While Chris and Matthew were being detained, team members stealthily entered Ann's property and surrounded her house with weapons drawn.

81.      None of the team members tried to warn Ann that they were outside carrying loaded weapons, and Busby prevented Chris from doing so.  The team did not use their bullhorn to announce their presence and purpose.

82.      Busby and Bartel, and the other defendants, knew that there were no exigent circumstances which would justify their entry on Ann's premises or the forced intrusion into her home. The only danger that morning was the one which the team created by their failure to confirm that the warrants were active, confirm McLeod's correct residence address, and confirm his whereabouts at the time of the entry,   and by their use of disproportionate force.

83.      At 6:30 a.m. on December 19, 2019 Ann was sleeping in a back bedroom when she was awakened by the beam of a flashlight in the dark back yard.  Terrified because she was alone in the house, and knowing burglaries had recently occurred nearby, she put a green pull-over on over her pink and black pajamas, took a pistol from a bureau, and walked from the bedroom toward the kitchen to check that the outside doors were locked.

84.      As Ann neared the kitchen, the Defendants Welch, Skipper and Fondren (and unknown persons A through K), acting under Bartel's direction, crept silently into the carport and formed a "stack" outside the kitchen side-door.  Welch and Skipper were armed with Glock automatic pistols equipped with high intensity tactical lights delivering LED-generated light designed to blind and

17

disorient the target.  Fondren carried a Colt M4A1 Carbine, a lighter and shorter variant of the M16A2 assault rifle.  It was equipped with a red dot optic system, and a tactical high intensity light.

85.     Ann did not know that anyone was present on the carport.  She could not see out because the blinds built into the kitchen door's window were drawn.  Suddenly, without announcing police presence or warning, the agents smashed open the door, which flew back into the house with a loud bang, striking a hutch and shattering the glass in the door window.  Ann was blinded by Welch, Skipper and Fondren's tactical lights which they shone directly at her from the dark carport.  She stood frozen in shock just inside the door of her dark kitchen.  She held the gun but never fired.

86.     The agents fired dozens of shots at her through the breached doorway, screaming "gun – gun."  At least five of the bullets struck Ann in the abdomen and pelvis.  She fell to the kitchen floor critically wounded.

87.     Defendant Welch, one of the shooters, participated in the GCRFTF as a specially deputized U.S. Marshal and acted under the direction of Bartel, the MCSO designated "team leader," when he entered the property at 11223 Old Moffat Rd. on December 19, 2019 and fired shots from the carport into Ann's home as she stood in her kitchen.

88.     On information and belief, one or more bullets which Welch fired struck Ann, and other bullets he fired penetrated fixtures and the interior walls of the house.

89.     Welch had no basis to reasonably believe that Nicholas McLeod lived at 11223 Old Moffat Rd. and had no basis to reasonably believe that Nicholas McLeod was present inside the house when he entered the property.

90.     Defendant Skipper, one of the shooters, participated in the GCRFTF as a specially deputized U.S. Marshal and acted under the direction of Bartel, the MCSO designated "team leader"

18

when he entered the property at 11223 Old Moffat Rd. on December 19, 2019 and fired shots from the carport into Ann's home as she stood in her kitchen.

91.     On information and belief, one or more bullets which Skipper fired struck Ann, and other bullets he fired penetrated fixtures and the interior walls of the house.

92.     Skipper had no basis to reasonably believe that Nicholas McLeod lived at 11223 Old Moffat Rd. and had no basis to reasonably believe that Nicholas McLeod was present inside the house when he entered the property.

93.     Defendant Fondren, one of the shooters, participated on the arrest team as a HSI agent. He acted under the direction of Bartel, the MCSO designated "team leader", on December 19, 2019 when he entered the property at 11223 Old Moffat Rd. and fired shots from the carport into Ann's home as she stood in the kitchen.

94.     On information and belief, one or more bullets which Fondren fired hit Ann, and other bullets he fired penetrated fixtures and the interior walls of the house.

95.     Fondren had no basis to reasonably believe that Nicholas McLeod lived at 11223 Old Moffat Rd., and he had no basis to reasonably believe that Nicholas McLeod was present inside the house when he entered the property.

96.     Welch, Skipper and Fondren withdrew after shooting Ann, leaving her alone and unattended on the kitchen floor for fifteen minutes – face-down, conscious but unable to talk, bleeding heavily, and in excruciating pain.

97.     Team members finally entered the house and rolled Ann over from the prone to supine position.  They then manhandled her by her limbs from the kitchen to the carport and lay her on the concrete floor.

98.     Team members then circled the exterior of Ann's house and "cleared" it by smashing open the front door, breaking windows around the perimeter of the house, and firing dozens of additional shots inside the home.  There was nothing to clear.  Nicholas McLeod was in jail.  No-one was in the house.

99.     An ambulance with medical personnel eventually arrived.  Ann was placed on a gurney and rushed to the University of South Alabama Medical Center where she was admitted in critical condition.  She underwent immediate emergency surgery for gunshot wounds to her thorax which caused acute respiratory failure; acute pulmonary edema; acute posthemorrhagic anemia; rib and right pubis fractures; a major laceration of the liver, laceration of the diaphragm, and lung, bladder, and kidney injury.  A bullet fragment remains lodged near her spine.

100.    Alabama State Bureau of Investigation (SBI) agents arrived on the scene shortly after the shooting.  At about 11:40 am on December 19, 2019 an SBI agent obtained a Mobile County District Court search warrant for 11223 Old Moffatt Road.  The residence was extensively searched, measured and photographed and Ann's blood was collected.  The only item seized was Chris' unfired pistol.

101.    Ann remained hospitalized from December 19, 2019 to January 6, 2020 and incurred over $120,000 in medical bills.  She has no medical insurance, and the debt remains outstanding.  Ann continues to require ongoing medical treatment for the lasting effects of the gunshot wounds, and suffers weakness, continuing pain, disability, emotional distress from the extreme trauma, and suffers the loss of income.

**CAUSES OF ACTION**

A.    <u>Allegations Applying to Counts I-II (The Fourth Amendment Excessive Force Claims brought under *Bivens*)</u>

20

102.    Plaintiff seeks an award of compensatory and punitive damages and declaratory relief against Defendants, individually, as listed in Counts I-II, below pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, as a result of their actions which deprived Plaintiff of her constitutional rights.

103.    Defendants' actions as alleged herein violated Plaintiff's clearly established, constitutionally guaranteed rights to be free from unreasonable and unlawful searches and seizures, and to be free from the use of excessive force.

104.    Defendants' entry into Ann's residence at 11233 Old Moffat Rd. to arrest Nicholas McLeod was not reasonable.  The Defendants' had no reasonable belief, based upon the totality of facts and circumstances, to believe that Nicholas McLeod lived at that residence, and they had no reasonable belief that Nicholas McLeod was present in the residence then and there.  Despite having no reason to believe that 11233 Old Moffat Rd. was Nicholas McLeod's residence, and that he was present there, the Defendants forcefully entered Ann's home without any legal right or justification and with a wholly unjustified degree of firepower under the circumstances.  Defendants therefore had no right whatsoever to use any force, much less lethal force, upon Ann.  In shooting Ann, the Defendants violated her Fourth Amendment rights to be free from excessive and deadly force.

105.    Defendants' violation of Plaintiff's Fourth Amendment rights was willful, egregious, and done with deliberate indifference to Plaintiff's clearly established constitutional rights.

106.    As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will in the future suffer economic loss.

**Count I**

21

**Use of Deadly Force – Violation of Ann's Fourth Amendment Rights Liable under *Bivens* (Against Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren)**

107.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

108.    Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren used excessive force to detain Ann, and thereby violated her Fourth Amendment right against unreasonable search and seizure.

109.    The said Defendants used deadly physical force against Ann in violation of Ann's Fourth Amendment rights, and the use of said force was constitutionally unreasonable.

110.    The said Defendants' conduct was done with reckless indifference or malice to Ann's federally protected rights.

111.    As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

### Count II

**Use of Deadly Force – Violation of Ann's Fourth Amendment Rights Liable under *Bivens* (Against Beau Bartel)**

112.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

113.    Defendant Bartel directed team members, including defendants Welch, Skipper and Fondren, to enter into Ann's property and residence arrest at 11223 Old Moffat Rd. on December 19, 2019 to arrest Nicholas McLeod, even though he had no reason to believe Nicholas McLeod lived there and no reason to believe he was present in the residence then and there.  Bartel had actual knowledge that the arrest warrant verification process for the MCSO round-up was unreliable.  He directly and

22

proximately caused Ann's shooting by ordering team members, including Welch, Skipper and Fondren to engage in conduct that proximately caused Ann to be shot in her home and violated her Fourth Amendment right to be free from excessive and deadly force.

114.    Bartel personally participated in the violation of Ann's constitutional rights.

115.    Bartel directed other defendants, including the shooters, to enter the property and take actions which violated Ann's Fourth Amendment rights, and failed to stop other defendants, including the defendant shooters, from doing so.

116.    Bartel's conduct was done with reckless indifference or malice to Ann's federally protected rights.

117.    As a proximate result of Bartel's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**B.    Allegations Applying to Counts III - IV (The Fourth Amendment Unlawful Entry Claims brought under *Bivens*)**

118.    Plaintiff seeks an award of compensatory and punitive damages and declaratory relief against Defendants, individually, as listed in Counts III-IV, below pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, as a result of their unlawful entry which deprived Plaintiff of her Fourth Amendment rights.  Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

## Count III

### Unlawful Entry –Violation of Ann's Fourth Amendment Rights Liable under *Bivens* (Against Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren)

119.    Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren used a show of force to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without probable cause, or even arguable probable cause, for entry onto Ann's property or into her domicile.

120.    Defendants violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

121.    The said Defendants' conduct was done with reckless indifference or malice to Ann's federally protected rights.

122.    As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count IV

### Unlawful Entry –Violation of Ann's Fourth Amendment Rights Liable under *Bivens* (Against Beau Bartel)

123.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

124.    Bartel used a show of force to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without probable cause or even arguable probable cause for entry onto Ann's property or into her domicile.

125.    Bartel personally participated in the violation of Ann's constitutional rights.

24

126.     Bartel directed other defendants, including the shooters, to enter the property and take

actions in violations of Ann's Fourth Amendment rights, and failed to stop other defendants, including

the shooters, from doing so.

127.     Bartel violated Ann's Fourth Amendment rights to be free from unreasonable searches

and seizures.

128.     Bartel's conduct was done with reckless indifference or malice to Ann's federally

protected rights.

129.     As a proximate result of Bartel's conduct, Ann was shot, suffered traumatic physical

injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer

ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

C.     **Allegations Applying to Counts V – VI (The Fourth Amendment Failure to Knock and Announce Claims brought under Bivens)**

130.     Plaintiff seeks an award of compensatory and punitive damages and declaratory relief

against Defendants, individually, as listed in Counts V – VI, below pursuant to *Bivens v. Six Unknown*

*Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as a result of their failure to

knock and announce their presence and authority prior to entry, which deprived Plaintiff of her Fourth

Amendment rights.  Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the

complaint and incorporates the same by reference herein.

### Count V

**Failure to Knock and Announce –Violation of Ann's Fourth Amendment Rights Liable under Bivens (Against Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren)**

131.     Without prior notice to Ann of their presence or intent, Austin Wade Welch, John

Gregory Skipper, and Scott Ray Fondren used a show of force to enter onto Ann's property and into

Ann's domicile with no reasonable suspicion that she had committed a crime and without probable cause, or even arguable probable cause, for entry onto Ann's property or into her domicile.

132.    Defendants violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

133.    The said Defendants' conduct was done with reckless indifference or malice to Ann's federally protected rights.

134.    As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

### Count VI

### Failure to Knock and Announce –Violation of Ann's Fourth Amendment Rights Liable under Bivens (Against Beau Bartel)

135.    Without prior notice to Ann of their presence or intent, Bartel used a show of force, and directed others, to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without probable cause, or even arguable probable cause, for entry onto Ann's property or into her domicile.

136.    Bartel personally participated in the violation of Ann's constitutional rights.

137.    Bartel directed other defendants, including the shooters, to enter the property and take actions in violations of Ann's Fourth Amendment rights, and failed to stop other defendants, including the shooters, from doing so.

138.    Defendant violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

139.    The said Defendant's conduct was done with reckless indifference or malice to Ann's federally protected rights.

26

140.     As a proximate result of the Defendant's conduct, Ann was shot, suffered traumatic

physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues

to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**D.     Allegations Applying to Counts VII-IX (The Fourth Amendment Claims brought under 42
U.S.C. Section 1983 For Excessive Force)**

141.     Plaintiff seeks an award of compensatory and punitive damages and declaratory relief

against Defendants, Welch, Skipper, Fondren, Bartel, Miller, and Smith, individually, as listed in Counts

VII – IX, below, pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1983, as a result of their

actions which deprived Plaintiff of her Fourth Amendment rights from excessive and deadly force.

142.     The Defendants acted under color of Alabama law when they entered (or directed the

entry of) Plaintiff's property on December 19, 2019, broke into her house, and shot her.  The defendants

were attempting to serve a Mobile County arrest warrant on an Alabama resident accused of committing

a state law offense.  Nicholas McLeod was not a fleeing fugitive - he was already under arrest for the

minor drug offense which occurred nearly six months earlier. There was no interstate travel, federal

interest, or commerce clause nexus arising from McLeod's June 27, 2019 attempt to purchase $50.00 of

fake methamphetamine from a Mobile County informant, and there were no exigencies.

143.     Mobile County Sheriff's Office personnel decided to swear criminal complaints and

obtain arrest warrants for Nicholas McLeod on December 17, 2019. This was done so that McLeod

could be included in the planned December 19, 2019 MCSO "round-up." MCSO law enforcement

officers organized and commanded the round-up operation.   Only the team led by Defendant Bartel

(one of the four round-up teams) had any federal presence.  Bartel's team was a hybrid composed of

Deputy United States Marshals and Alabama City, Sheriff's, County and State agents ( TFOs) who were

specially deputized U.S. Marshals; Department of Homeland Security, HSI, personnel and Alabama City

27

and County TFOs who were not specially deputized U.S. Marshals; and non-federal Mobile County

Sheriff's Deputies, K-9 officers, and medical personnel.

144.    The MCSO had entered into a Memorandum of Understanding (MOU) with the United

States Marshal's Service whereby it participated in the Gulf Coast Regional Fugitive Task Force.

Pursuant to the terms of the MOU, the MCSO requested that the GCRFTF assume apprehension

responsibility to serve some of the warrants involved in the December 19, 2019 round-up, including the

Nicholas McLeod warrants.  Under the MOU and USMS Policy the GCRFTF exercised sole discretion

whether or not to "adopt" (assume apprehension responsibility for) the Alabama warrants for McLeod's

arrest.

145.    Even if the GCRFTF properly adopted the Nicholas McLeod arrest warrants, the federal

agents still acted under color of Alabama law when they attempted to serve them, because the MOU

provided that the MCSO retain responsibility for the cases which it referred to the GCRFTF. On

information and belief Homeland Security agents, including the defendant Fondren, participated in the

December 19, 2019 round up attempt to arrest McLeod under and agreement with the MSCO.

146.    Alternatively, if the GCRFTF did not adopt the Nicholas McLeod arrest warrants by

taking the actions required by the USMS Enforcement Operations Policy SOPs, and the terms of the

MOU, then the federal agents acted solely under color of Alabama law when they attempted to serve

them. Further, if the Homeland Security agents participated in the December 19, 2019 round up attempt

without an agreement with the MSCO, the federal agents acted solely under color of Alabama law.

147.    Neither Welch, Skipper, Fondren or Bartel were attempting to execute the laws of the

United States of December 19, 2019 when they went to 11223 Old Moffat Road, Wilmer, Alabama to

arrest Nicholas McLeod.  28 U.S.C.S. §564 provides that "United States marshals, deputy marshals and

28

such other officials of the Service as may be designated by the Director, in executing the laws of the United States within a State, may exercise the same powers which a sheriff of the State may exercise in executing the laws thereof."  Further, under 18 U.S.C.S. §3053 "United States marshals and their deputies may carry firearms and may make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

## Count VII

### Unconstitutional Use of Excessive and Deadly Force - Violation of Ann's Rights Liable under 42 U.S.C. §1983 (Against Austin Wade Welch ,John Gregory Skipper, Rebecca P. Miller, and David Smith)

148.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

149.    Rebecca P. Miller and David Smith, despite a non-discretionary duty to provide the arresting agents of accurate information that would have conclusively eliminated Ann McLeod as a target of a potentially deadly raid, provided erroneous information which proximately and foreseeably led to Ann's shooting.

150.    Austin Wade Welch and John Gregory Skipper used excessive force to arrest and detain Ann, and thereby violated her Fourth Amendment right against unreasonable search and seizure.  Welch, a Baldwin County Deputy, had no authority under state law to execute Mobile County arrest warrants in Mobile County.  Ala. Code §15-10-1.  Skipper, an Alabama Department of Corrections officer, had no authority to execute Mobile County arrest warrants for matters unrelated to the correctional setting. Ala. Code §§14-3-9 and 36-21-40.

29

151.     Skipper and Welch's status as specially deputized United States Marshals did not confer them with federal authority to execute the McLeod state arrest warrants.  28 U.S.C.S. §564 empowers them only to aid in the execution of the laws of the United States.

152.     The said Defendants used deadly physical force against Ann in violation of her Fourth Amendment rights, and the use of said force was constitutionally unreasonable.

153.     The said Defendants' conduct was done with reckless indifference or malice to Ann's federally protected rights.

154.     As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**Count VIII**

**Unconstitutional Use of Excessive and Deadly Force – Violation of Ann's Rights Liable under 42 U.S.C. §1983 (Against Scott Ray Fondren)**

155.     Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

156.     Scott Ray Fondren, an Immigration Enforcement Agent with U.S. Customs and Border Protection, acted under color of state law when he used lethal physical force against Ann in violation of her Fourth Amendment rights, and the use of said force was constitutionally unreasonable.

157.     The said Defendant's conduct was done with reckless indifference or malice to Ann's federally protected rights.

158.     As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**Count IX**

**Use of Deadly Force – Violation of Ann's Fourth Amendment Rights Liable under 42 U.S.C. 1983 (Against Beau Bartel)**

159.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

160.    Defendant Bartel directed team members, including defendants Welch, Skipper and Fondren, to enter into Ann's property and residence at 11223 Old Moffat Rd. on December 19, 2019 to arrest Nicholas McLeod, even though he had no reason to believe Nicholas McLeod lived there and no reason to believe he was present in the residence then and there.  Bartel had actual knowledge that the arrest warrant verification process for the MCSO round-up was unreliable.  He directly and proximately caused Ann's shooting by ordering team members, including Welch, Skipper and Fondren to engage in conduct that proximately caused Ann to be shot in her home and violated her Fourth Amendment right to be free from excessive and deadly force.

161.    Bartel personally participated in the violation of Ann's constitutional rights.

162.    Bartel directed other defendants, including the shooters, to enter the property and take actions in violations of Ann's Fourth Amendment rights, and failed to stop other defendants, including the shooters, from doing so.

163.    Bartel's conduct was done with reckless indifference or malice to Ann's federally protected rights.

164.    As a proximate result of Bartel's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

E.   **Allegations Applying to Counts X-XIII (The Fourth Amendment Claims brought under 42 U.S. Section 1983 For Unlawful Entry)**

165.   Plaintiff seeks an award of compensatory and punitive damages and declaratory relief against Defendants, individually, as listed in Counts X-XIII, below, pursuant to the Civil Rights Act of 1871, 42 U.S.C. Section 1983, as a result of their unlawful entry which deprived Plaintiff of her Fourth Amendment rights.

**Count X**

**Unlawful Entry – Violation of Ann's Rights Liable under 42 U.S.C. §1983 (Against Austin Wade Welch,John Gregory Skipper, Rebecca P. Miller, and David Smith)**

166.   Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

167.   Rebecca P. Miller and David Smith, despite a non-discretionary duty to provide the arresting agents of accurate information that would have conclusively eliminated Ann McLeod as a target of a potentially deadly raid, provided erroneous information which proximately and foreseeably led to Ann's shooting.

168.   Austin Wade Welch and John Gregory Skipper, acting under color of state law, used force and a show of force to enter onto Ann's property and into her domicile without a search warrant, without a reasonable belief that she had committed any crime, and without license or even arguable probable cause to do so. Further, the defendants had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and no reasonable cause to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019

169.   Defendants violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

170.   As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic

physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

### Count XI

### Unlawful Entry – Violation of Ann's Rights Liable under 42 U.S.C. §1983
### (Against Scott Ray Fondren)

171.   Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

172.   Acting under color of state law Scott Ray Fondren used force and a show of force to enter onto Ann's property and into her domicile without a search warrant, without a reasonable belief that she had committed any crime, and without license or even arguable probable cause to do so. Further, Fondren had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and had no reasonable cause to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019.

173.   The defendant had a constitutional duty to confirm information which would justify the Defendants' entry into Ann's home. Because a search warrant had not issued, defendant was required to confirm an active arrest existed; that 11223 Old Moffat Road was Nicholas McLeod's residence; and that Nicholas McLeod was present in the residence then and there. He breached his constitutional duty because he had no reasonable belief that 11223 Old Moffat Road was Nicholas McLeod's residence, and that he was present inside the residence at 6:30 a.m. on December 19, 2019.  As a proximate result of the breach, Ann was injured and suffered damages accordingly.

174.   Defendant violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

175.   As a proximate result of the Defendant's conduct, Ann was shot, suffered traumatic

physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count XII

### Unlawful Entry – Violation of Ann's Rights Liable under 42 U.S.C. §1983
### (Against Beau Bartel)

176.     Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

177.     Acting under color of state law Beau Bartel directed that Defendants Welch, Skipper, and Fondren, use force and a show of force to enter onto Ann's property and into her domicile without a search warrant, without a reasonable belief that she had committed any crime, and without license or even arguable probable cause to do so. Further, Bartel had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019

178.     The defendant had a constitutional duty to confirm information which would justify the Defendants entry into Ann's home. Because a search warrant had not issued, defendant was required to confirm an active arrest existed; that 11223 Old Moffat Road was Nicholas McLeod's residence; and that Nicholas McLeod was present in the residence then and there. He breached his constitutional duty because he had no reasonable belief that 11223 Old Moffat Road was Nicholas McLeod's residence, and that McLeod was present inside the residence at 6:30 a.m. on December 19, 2019.  As a proximate result of the breach, Ann was injured and suffered damages accordingly.

179.     Defendant violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures. Bartel's conduct was done with reckless indifference or malice to Ann's federally protected rights.

34

180.    As a proximate result of the Defendant's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count XIII

**Unlawful Entry – Violation of Ann's Rights Liable under 42 U.S.C. §1983 (Against Raylene Busby)**

181.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

182.    Raylene Busby entered and directed others to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without license or even arguable probable cause to do so. Further, Busby had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and no reasonable cause to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019.

183.    Busby had a constitutional duty to confirm information which would justify the Defendants' entry into Ann's home. Because a search warrant had not issued, Busby was required to confirm an active arrest existed; that 11223 Old Moffat Road was Nicholas McLeod's residence; and that Nicholas McLeod was present in the residence then and there. Busby breached her constitutional duty because she had no reasonable belief that 11223 Old Moffat Road was Nicholas McLeod's residence, and that he was present inside the residence at 6:30 a.m. on December 19, 2019.  As a proximate result of the breach, Ann was injured and suffered damages accordingly.

184.    Busby violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

185.    Busby's conduct was done with reckless indifference or malice to Ann's federally protected rights.

186.     As a proximate result of Busby's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**F.**     **Allegations Applying to Counts XIV – XVI (The Fourth Amendment Failure to Knock and Announce Claims brought under 42 U.S.C. §1983)**

187.     Plaintiff seeks an award of compensatory and punitive damages and declaratory relief against Defendants, Welch, Skipper, Fondren, Bartel, Miller, and Smith individually, as listed in Counts XIII – XV, below pursuant to 42 U.S.C. §1983, as a result of their failure to knock and announce which deprived Plaintiff of her Fourth Amendment rights.  Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

**Count XIV**

**Failure to Knock and Announce –Violation of Ann's Fourth Amendment Rights Liable under 42 U.S.C. §1983 (Against Austin Wade Welch, John Gregory Skipper, Rebecca P. Miler, and David Smith)**

188.     Rebecca P. Miller and David Smith, despite a non-discretionary duty to provide agents with accurate information that would have conclusively eliminated Ann McLeod as a target of a potentially deadly arrest attempt, provided incomplete and erroneous information which proximately and foreseeably led to Ann's shooting.

189.     Without prior notice to Ann of their presence or intent, Austin Wade Welch and John Gregory Skipper used a show of force to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without license or even arguable probable cause to do so. Further, they had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, or to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019.

36

190.    Defendants violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures. The said Defendants' conduct was done with reckless indifference or malice to Ann's federally protected rights. As a proximate result of the Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

### Count XV

### Failure to Knock and Announce –Violation of Ann's Fourth Amendment Rights Liable under 42 U.S.C. 1983 (Against Scott Ray Fondren)

191.    Without prior notice to Ann of his presence or intent, Scott Ray Fondren used a show of force to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed a crime and without probable cause, or even arguable probable cause, for entry onto Ann's property or into her domicile. Further, he had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019

192.    Defendant violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

193.    The said Defendant's conduct was done with reckless indifference or malice to Ann's federally protected rights.

194.    As a proximate result of the Defendant's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count XVI

### Failure to Knock and Announce –Violation of Ann's Fourth Amendment Rights Liable under 42 U.S.C. §1983 (Against Beau Bartel)

195.    Without prior notice to Ann of his or the other defendants presence or intent, Defendant Beau Bartel directed the Defendants Austin Wade Welch, John Gregory Skipper, and Scott Ray Fondren to use a show of force to enter onto Ann's property and into Ann's domicile with no reasonable suspicion that she had committed any crime and without and without license or even arguable probable cause to do so. Further, Bartel had no reasonable cause to believe that 11223 Old Moffat Road was Nicholas McLeod's residence, and had no reasonable cause to believe that he was present inside the residence at 6:30 a.m. on December 19, 2019.

196.    Defendant violated Ann's Fourth Amendment rights to be free from unreasonable searches and seizures.

197.    Bartel's conduct was done with reckless indifference or malice to Ann's federally protected rights.

198.    As a proximate result of the Defendant's conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**G.    Allegations Pertaining to Counts XVII-XX (Federal Tort Claims Act; 28 U.S.C. §1346(b), 2671-80)**

199.    Plaintiff seeks an award of compensatory damages and declaratory relief against the United States of America, as listed in Counts XVII-XX, below, pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346(b), 2671-80, as a result of its tortious actions.

### Count XVII

**Assault and Battery Claim Against the United States of America pursuant to the Federal Tort Claims Act 28 U.S.C. §1346(b), 2671-80**

200.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

201.    The Defendant United States, acting through its agents, shot Ann, directed the shooting of Ann in her residence, or failed to intervene to prevent her shooting, and thereby caused her shooting. Said intentional acts both battered Ann as well as put her in reasonable fear of an imminent battery.

202.    As a proximate result of the conduct of the Defendant's agents, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

203.    The Defendant's agents were not acting to defend themselves, other peace officers, or innocent third parties at imminent risk of harm under the circumstances then prevailing when the agents unlawfully invaded Ann's home and shot her.

204.    In the course of said assault and battery, the Defendant's agents acted willfully, maliciously, in bad faith, or beyond its authority.

205.    Defendant's agents acted with reckless indifference to the likelihood that their conduct would cause grievous bodily injury or deprive Ann of her life.

**Count XVIII**

**Negligence Claim Against the United States of America pursuant to the Federal Tort Claims Act 28 U.S.C. §1346(b), 2671-80**

206.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

207.     Defendant United States, acting through its agents, owed Ann a duty of care not to cause her harm, to injure her body, or to cause her any suffering or emotional distress as the harms herein alleged, to wit the above-described acts by its employees or agents.

208.     In the course of said negligence, the Defendant's agents acted willfully, maliciously, in bad faith, or beyond their authority.

209.     As a proximate result of the Defendant's agents' conduct, Ann was shot, suffered traumatic injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count XIX

### Wantonness Claim Against the United States of America pursuant to the Federal Tort Claims Act 28 U.S.C. §1346(b), 2671-80

210.     Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

211.     The Defendant United States, through its agents, owed Ann a duty of care not to cause her harm, including the bodily injury and the suffering and emotional distress alleged above.  The acts of the named individual Defendants, and members of the GCRFTF, were undertaken as agents of the United States, and those acts caused Ann grievous bodily injury and suffering and emotional distress.

212.     The Defendants' agents' wanton conduct was undertaken as agents of the United States, and the conduct was performed and carried on with a reckless or conscious disregard of Ann's rights and safety.  In the course of said wanton conduct, the Defendant United States, through its agents, acted willfully, maliciously, in bad faith, and / or beyond its authority.

213.    As a proximate result of the conduct of the United States, through its agents, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

## Count XX

### False Imprisonment Claim Against the United States of America pursuant to the Federal Tort Claims Act 28 U.S.C. §1346(b), 2671-80

214.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

215.    Defendant United States through its employees or agents, substantially deprived Ann of her freedom of movement by use of physical barriers, force, threats of force, and menace.

216.    The restraint, confinement, and/or detention of Ann by the Defendant United States was wrongful.  She did not knowingly or voluntarily consent to said restraint, confinement, and/or detention.

217.    As a proximate result of the Defendant's agents' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

218.    Defendant United States, by and through its employees and agents, committed the acts alleged herein acted willfully, maliciously, in bad faith, or beyond its authority.

219.    The Defendant United States, through its agents, owed Ann a duty of care not to cause her harm, including the bodily injury and the suffering and emotional distress alleged above.  The acts of the named individual Defendants, and members of the GCRFTF, were undertaken as agents of the United States, and those acts caused Ann grievous bodily injury and suffering and emotional distress.

41

220.    The Defendants' wanton conduct was undertaken as agents of the United States, and the conduct was performed and carried on with a reckless or conscious disregard of Ann's rights and safety. In the course of said wanton conduct, the Defendant United States, through its agents, acted willfully, maliciously, in bad faith, and / or beyond its authority.

221.    As a proximate result of the conduct of the United States, through its agents, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

**H.      Allegations Pertaining to Counts XXI-XXVI below (for Violations of Alabama State Law Against John Gregory Skipper, Austin Wade Welch, Raylene Busby, Rebecca P. Miller, and David Smith)**

222.    Plaintiff seeks an award of compensatory and punitive damages against Defendants, John Gregory Skipper, Austin Wade Welch, Raylene Busby, Rebecca Miller, and David Smith,  individually, as listed in Counts XXI-XXVI below, for violations of Alabama State Law as hereafter specifically pled. Plaintiff realleges all of the allegations in the foregoing paragraphs of the complaint.

223.    John Gregory Skipper was, at the time of this incident, an Alabama Department of Corrections Sergeant/Training Instructor.  His conduct, as alleged herein, in the foregoing paragraphs was beyond the scope of his employment, therefore he acted beyond his authority.  In the alternative, his actions were done willfully, maliciously, in bad faith, or beyond his authority.

224.    Austin Wade Welch was, at the time of this incident, a Baldwin County Deputy Sheriff. All the conduct alleged herein took place in Mobile County, Alabama, and outside of his jurisdiction. His conduct, as alleged herein, in the foregoing paragraphs was beyond the scope of his employment, therefore he acted beyond his authority.  Nor was Deputy Welch "acting in compliance with the law"

42

pursuant to Code of Alabama §§14-6-1, *et seq*, or Code of Alabama §36-22-3(b).  Defendant Welch's actions were done willfully, maliciously, in bad faith, or beyond his authority.

225.    Raylene Busby was, at the time of this incident, a Mobile County Deputy Sheriff.  Her conduct, as alleged herein, in the foregoing paragraphs was beyond the scope of her employment, therefore she acted beyond her authority.  Nor was Deputy Busby "acting in compliance with the law" pursuant to Code of Alabama 14-6-1, *et seq.* or Code of Alabama 36-22-3(b) .  Defendant Busby's actions were done willfully, maliciously, in bad faith, or beyond her authority.

226.    Rebecca P. Miller and David Smith, despite a non-discretionary duty to provide the arresting agents of accurate information that would have conclusively eliminated 11223 Old Moffat Road, Wilmer and Ann McLeod as a target of a potentially deadly arrest attempt, provided incomplete and erroneous information which proximately and foreseeably led to Ann's shooting.

**Count XXI**

**Assault and Battery in Violation of Alabama State Law**

227.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

228.    The said Defendants either shot Ann, directed the shooting of Ann in her residence, or failed to intervene with the duty to do so.  Said intentional act both battered Ann as well as put her in reasonable fear of an imminent battery.

229.    As a proximate result of the said Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

230.     The said Defendants were not acting to defend themselves, other peace officers, or innocent third parties at imminent risk of harm under the circumstances then prevailing when they unconstitutional invaded Ann's home and shot her.

231.     In the course of said assault and battery, the said Defendants acted willfully, maliciously, in bad faith, or beyond their authority.

232.     The said Defendants engaged in oppression, fraud, wantonness, or malice with regard to Ann.

## Count XXII

### Intentional Infliction of Emotional Distress in Violation of Alabama State Law

233.     Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

234.     The conduct of the said Defendants as alleged above, was outrageous and intolerable and it offended generally accepted standards of decency and morality.

235.     Said Defendants engaged in such conduct with the intent of causing, or with reckless disregard to the likelihood of causing, Ann's severe emotional and mental distress.

236.     As a proximate result of the said Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

237.     In the course of said intentional infliction of emotional distress, the said Defendants acted willfully, maliciously, in bad faith, or beyond their authority.

238.     The said Defendants engaged in oppression, fraud, wantonness, or malice with regard to Ann.

44

**Count XXIII**

**Negligence in Violation of Alabama State Law**

239.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

240.    Said Defendants owed Ann a duty of care not to cause her harm, to injure her body, or to cause her any suffering or emotional distress.  Said Defendants breached this duty.

241.    The MCSO policy requiring MSCO employees conduct a thorough background check into arrest suspects' residence addresses and whereabouts and to verify that arrest warrants were active immediately prior to attempted service had as its purpose to prevent innocent third parties from being injured in an aborted arrest attempt.

242.    As a proximate result of the said Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

243.    In the course of said negligence, the said Defendants acted willfully, maliciously, in bad faith, or beyond their authority.

244.    The said Defendants engaged in oppression, fraud, wantonness, or malice with regard to Ann.

**Count XXIV**

**Wantonness in Violation of Alabama State Law**

245.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

246.    Defendants owed Ann a duty of care not to cause her harm, to injure her body, or to cause her any suffering or emotional distress.  Defendants breached this duty.

45

247.   The Defendant's conduct was wanton because it was performed and carried on with a reckless or conscious disregard of Ann's rights and safety.

248.   In the course of said wanton conduct, the Defendants acted willfully, maliciously, in bad faith, and/or beyond their authority.

249.   As a proximate result of the conduct of the Defendants, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

250.   Said Defendants engaged in oppression, fraud, wantonness, or malice with regard to Ann.

## Count XXV

### Invasion of Privacy in Violation of Alabama State Law

251.   Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

252.   Said Defendants owed Ann a duty of care not to cause her harm, to injure her body, or to cause her any suffering or emotional distress as the harms herein alleged, the above-described acts by its employees or agents, said Defendants intentionally committed a substantial intrusion, physically and otherwise, upon the solitude and seclusion of Ann which would be considered highly offensive to a reasonable person and such intrusion caused harm to Ann.

253.   As a proximate result of the said Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

254.   In the course of said invasion, the said Defendants acted willfully, maliciously, in bad faith, or beyond their authority.

46

255.    Said Defendants' agents engaged in oppression, fraud, wantonness, or malice with regard to Ann.

## Count XXVI

## False Imprisonment in Violation of Alabama State Law

256.    Plaintiff reasserts the allegations contained in all of the foregoing paragraphs of the complaint and incorporates the same by reference herein.

257.    Said Defendants substantially deprived Ann of her freedom of movement by use of physical barriers, force, threats of force, and menace.

258.    The restraint, confinement, and/or detention of Ann by the said Defendants was wrongful. She did not knowingly or voluntarily consent to said restraint, confinement, and/or detention.

259.    As a proximate result of the said Defendants' conduct, Ann was shot, suffered traumatic physical injury and severe pain, was hospitalized, underwent surgery, lost bodily function, and continues to suffer ongoing pain, weakness, and emotional distress, and has suffered and will suffer economic loss.

260.    In the course of said conduct, the said Defendants acted willfully, maliciously, in bad faith, or beyond their authority.

261.    Said Defendants' agents engaged in oppression, fraud, wantonness, or malice with regard to Ann.

## RELIEF REQUESTED

WHEREFORE, based upon the foregoing, Plaintiff Ann Rylee McLeod demands the following relief against the Defendants:

(a)    A declaration that the Defendants, individually and collectively, violated Ann's Constitutional rights;

(b)     A declaration that the Defendants, individually and collectively, violated Ann's rights under The Federal Torts Claim Act;

(c)     Damages for emotional distress, pain and suffering, economic losses, punitive damages (where allowed by law), and nominal damages, in an amount which will adequately compensate the Plaintiff and reflect the wrongfulness of the Defendants' conduct which proximately caused Ann's damages and to prevent such conduct in the future by the Defendants.

(d)     Attorneys' fees and costs as allowed by statutes; and

(e)     Such other and further relief as appears just and proper.


### JURY DEMAND

Plaintiff demands trial by struck jury.

Respectfully submitted December 17, 2021.

/s/Arthur J. Madden, III_____
Arthur J. Madden, III (MADDA0656)
Madden & Soto
465 Dauphin St.
Mobile, AL 36602
251/432-0380
251/433-5964 (fax)
ajmadden@maddenandsoto.com

/s/Henry Brewster_____
Henry Brewster (BREWH7737)
HENRY BREWSTER, LLC
205 N Conception Street
Mobile, Alabama 36603
251-338-0630
hbrewster@brewsterlaw.net

COUNSEL FOR PLAINTIFF

48

## CERTIFICATE OF SERVICE

I certify that on January 12, 2022, the foregoing was filed with CM/ECF which will send notice to all parties:

K. Paul Carbo, Jr.
Michael Mark Linder, Jr.
Elizabeth Barry Parker
Constance Walker

*/s/Henry Brewster*